Green, Adm'r, *v.* Sargeant et al.

GEORGE B. GREEN, Administrator of FREDERIC PETTES, *v.* JABEZ SARGEANT, CHARLOTTE PETTES AND JEHIEL H. SIMONDS.

[IN CHANCERY.]

*Administrator's authority to create lien. Right to become purchaser of estate. Relief in equity. Effect of accounting in the probate court. Parties.*

An administrator cannot create a valid lien upon a specific part of the real estate of the deceased, for the purpose of extinguishing a lien held by the same mortgagee upon another part of the real estate; and if the first lien be actually released to a purchaser from the administrator, the incumbrancer can only assert his claim upon the property attempted to be substituted as his security, by showing that the avails of his interest in the estate first incumbered have been actually paid to the creditors of the estate.

An administrator has no right to become a purchaser of the estate upon which he administers, even when he is solvent and he pays the full price.

And the proceedings of the probate court, in allowing the administrator's account, in which he has charged himself with the price of property of the estate sold to himself, will not conclude those interested in the estate from instituting proceedings in equity to compel him to release the property for thebenefit of the estate.

Nor will it be conclusive against granting the relief sought in equity, that upon the rendition of a second account by the administrator, after he had resigned his trust, and about the time of the commencement of the proceedings in equity, he was charged with interest upon the price of the property so sold to himself.

Nor will it make any difference, in this respect, that an order of distribution was made by the probate court of the amount found in the hands of the administrator upon such accounting.

And the administrator *de bonis non* is the proper party to bring a bill in equity to compel the former administrator to release such property for the benefit of the estate.

APPEAL from the court of chancery. The orator alleged in his bill, that Frederic Pettes. died October 25, 1838, and William H. Pettes was appointed his administrator, and entered upon the duties of his appointment, but afterwards, May 14, 1839, resigned his trust,

and the defendant Jabez Sargeant was appointed administrator *de bonis non;* that Sargeant returned an inventory of the estate, amounting to $14,256,97, and the list of claims against the estate amounted to $71,792,46; that Sargeant obtained an order of sale of the real estate, and sold the same, amounting to $5609,82, and the personal property amounted to $7457,97; that Sargeant rendered his account in the probate court, February 14, 1843, and there was found in his hands $7632,13, and the probate court ordered $4489,49 to be distributed among the creditors, amounting to eleven cents on the dollar; that Sargeant neglected to pay the dividend, and thereupon a suit was commenced upon the administration bond, and such proceedings were had, that at the May Term, 1843, of Windsor county court, a judgment was rendered, and damages were assessed in favor of the Bank of Windsor, prosecutors in said suit, for $2438,73, against Sargeant and his bail, and execution was issued, which remained unsatisfied,—Sargeant and his sureties having become and still remaining wholly insolvent; that on the twenty fourth day of May, 1843, Sargeant was removed by the probate court, and the orator was appointed administrator *de bonis non;* that the creditors remained unpaid, and the orator was unable to obtain from Sargeant any means for paying them; that among the real estate of Frederic Pettes there was a brick store in Windsor, which was sold by Sargeant, under his order of sale, to James Marsh of Boston, for $3000,00; that, for the purpose of aiding Charlotte Pettes, who was the mother of Frederic Pettes, and the mother in law of Sargeant, in defrauding the creditors of the estate, Sargeant suggested to Marsh, that said Charlotte had a claim of dower in said store as part of the estate of her husband, deceased, and thereupon it was agreed between Sargeant, Marsh and Mrs. Pettes, that one note for $500,00 of said purchase should remain unpaid, until that claim was extinguished, and in Sargeant's account of his administration he charged himself and accounted only for the sum of $2500,00 for the sale of the store; that, for the purpose of farther carrying out said design, Sargeant, upon his order of sale, sold to Charlotte Pettes a tract of land belonging to the estate, called the "Clement lot," for $969,00, but received no pay therefor: that the time for rendering the administration account of Sargeant was fixed for February 14, 1843, and the hearing was then commenced, and closed February 18, 1843;

that Sargeant executed a deed of the "Clement lot" to Mrs. Pettes, February 6, 1843, and acknowledged it in due form February 14, 1843, and on the seventeenth of February, 1843, procured a quit-claim deed of said lot to be executed by Mrs. Pettes to the defendant Simonds, which was dated February 13, 1843, and Simonds then executed to Mrs. Pettes a mortgage deed of the same lot, dated February 17, 1843, conditioned for the payment, by Simonds to Mrs. Pettes, of $60,00 annually during her life, and Sargeant then procured Mrs. Pettes to execute to the widow of James Marsh, above named, a quit-claim deed of the brick store, dated February 13, 1843, and acknowledged February 17, 1843; that Sargeant caused all these deeds to be recorded February 27, 1843, and they were all executed without consideration, and for the purpose of effectuating the design above mentioned; and that the note for $500,00, above mentioned, still remained, uncollected, in the hands of Sargeant, and was justly part of the assets of the estate, and the "Clement lot" was really held by Simonds in trust for Sargeant, and should be held as part of the estate. And the orator prayed, that Mrs. Pettes might be decreed to release her claim to the "Clement lot," and that Simonds might be decreed to convey that lot to the orator, to be held by him as part of the estate, and that Sargeant might be decreed to release all his interest in that lot to the orator, and to deliver to the orator, for collection, the note against Marsh for $500,00, and for general relief.

The defendant Sargeant answered, alleging that the brick store, named in the bill, was set in the inventory and appraised by the appraisers, as subject to the dower of Mrs. Pettes in one third part thereof, at $2453,00, and that the "Clement lot" was set in the inventory at $1500,00; that soon after obtaining the order of sale named in the bill he commenced negotiations for making sale to James Marsh of the brick store, subject to the dower of Mrs. Pettes, and then applied to Mrs. Pettes for the purpose of ascertaining upon what terms she would release her claim; that she declined to release her claim, and insisted upon being paid $60,00 per year for her right of dower, and it was thereupon agreed between himself and Marsh, that he should convey the store to Marsh, without any reservation for the right of dower, for $3000,00, and should himself assume the responsibility of removing the incumbrance, and that for

$500,00 of the purchase money Marsh should give his note to this defendant, which should be deposited with some third person, and remain unpaid until the incumbrance should be removed, and it was accordingly so done; that on the first day of May, 1841, he had paid to Mrs. Pettes $120,00, for her dower in the store for the two preceding years, for which he had received no allowance in his administration account; that after Mrs. Pettes had released her right of dower, as stated in the bill, he had received the $500 note, and had received $313,51 in part payment thereof,—for which sum he had been compelled by the probate court to account, in rendering his second administration account, and that, previous to the commencement of this suit, he had, for a valuable consideration, assigned this note to a third person and had now no interest therein; that in rendering his first administration account he charged himself with but $2500,00, on account of the sale of the brick store; that the " Clement Lot " was advertised for sale, and Mrs. Pettes having expressed a wish to become the owner of that lot, it was struck off, upon a bid in her name, for $960,00, which was the highest sum offered, and that this defendant made the sale in good faith, believing that Mrs. Pettes would be able to pay for the lot from the avails of her claim against the estate and from other means; that in consequence of an appeal being taken from the allowance of her claim, she became unable to make the payment, and thereupon it was agreed, early in February, 1843, that she should convey the " Clement Lot " to some third person, and receive his note and mortgage, for her dower in the store, at the rate of $60,00 a year during her life, and should release her right of dower in the store; that this defendant applied to the defendant Simonds to accept the deed from Mrs. Pettes and give his note and mortgage, as agreed between them, and Simonds assented, and on the 17th of February, 1843, the several deeds named in the bill were delivered, and the $500,00 note was thereupon delivered to this defendant; that this defendant charged himself, in his first administration account, with the sum of $960,00 for the sale of the " Clement Lot " to Mrs. Pettes, and that constituted a part of the sum of $7632,13 found by the probate court in his hands, as stated in the bill, and since the commencement of this suit the probate court had charged him with interest upon that sum from the time of sale to the time of rendering his second ac-

count, which was December 28, 1843; that at the time of delivering said deeds it was agreed between Simonds and this defendant, that Simonds, after being indemnified for the liabilities assumed by him, should hold the "Clement Lot" in trust for this defendant; that these several deeds were executed in good faith, and without any intent to defraud the estate; that since the commencement of this suit Simonds had conveyed the "Clement Lot" to this defendant, subject to the mortgage to Mrs. Pettes, and this defendant had re-conveyed the same lot to Simonds, in trust, after being indemnified in the premises, to pay the residue of the avails of a sale thereof to the creditors of the estate, in payment of the dividend ordered by the probate court, as alleged in the bill; and this defendant admitted, that he and the sureties upon his administration bond had become insolvent.

The defendant Charlotte Pettes answered, alleging, that on the seventh of August, 1813, dower was assigned to her, of the estate of her late husband, Joseph Pettes, and, among other things, there were set to her three rooms and the cellar under the same in a certain wooden store in Windsor; that said store was cheaply constructed of wood, of two stories, and the rooms were occupied at high rents, compared with the cost of the building,—the portion assigned to this defendant renting for $130,00; that in 1818, or 1819, this store was consumed by fire; that a building of equal value might have been replaced upon the same site for $1000,00; that in 1823, or 1824, Frederic Pettes informed this defendant, that he desired to erect, upon the site of the former building, a brick building, upon an enlarged and expensive plan, but assured her, that her right of dower should not be impaired, but she should have her right in one third of the new building, and thereupon she assented to the erection of said building; that during the life time of said Frederic she never released to him her right, but was fully satisfied by him, or by some of the tenants of the new building, for her share of the rents thereof; that the appraisers upon the estate of Frederic Pettes appraised this brick building, as subject to the dower of this defendant, at $2453,00,—estimating the whole value at $3000,00, and the right of dower at $547,00; and in respect to the sale of the brick store to Marsh, and her refusal to release her right of dower therein, and the purchase of the "Clement Lot" by her, and her receiving secu-

rity upon that lot for her right of dower in the store and thereupon releasing that right, the facts were stated by this defendant, as they are above detailed from the answer of the defendant Sargeant. And this defendant denied all intent to defraud the creditors of the estate, but insisted, that she was legally entitled to the security she had received.

The defendant Simonds answered, alleging that he became party to the transaction in the manner and for the purposes set forth in the answer of the defendant Sargeant, and with no intent of defrauding the creditors of the estate.

The answers were traversed and testimony was taken, the substance of which is sufficiently stated in the opinion delivered by the court.

The court of chancery,—REDFIELD, Chancellor,—decreed, that the Clement lot must still be considered a part of the assets of the estate, and that it must be referred to a master to ascertain and report, whether any and what part of the interest of Charlotte Pettes in the brick store, by way of dower, had been paid to the creditors of the estate, and that, upon payment, by the orator, of the sum so ascertained and reported, the title to the "Clement Lot" should be released to him; and in respect to the $500,00 note the court made no decree,—leaving the parties to their legal rights; and no costs were allowed. The defendants waived a hearing before the master, and thereupon a final decree was made in favor of the orator, for the release of the "Clement Lot,"—from which decree the defendants appealed.

*C. Coolidge* for orator.

1. From all the circumstances a release of dower, or an agreement for such release, may and ought to be presumed.

2. If Charlotte Pettes had dower in February, 1843, then the equitable effect of the proceedings with the "Clement Lot" was, in its most favorable aspect for her, a giving up of a lien upon or interest in one part of the estate, and taking security therefor upon another part; in which point of view it is apparent, that the several deeds, or parts of the arrangement, have the effect of a mortgage only, if they have any effect on the property. It is, however, insisted, that the administrator had no power to mortgage the estate, or create a lien upon it.

3. But if still Charlotte Pettes be deemed to have an equity in the " Clement lot," by way of mortgage, as the effect of her having parted with dower in the brick store, what is that equity, and in whom and to whose use is the remaining estate? If Mrs. Pettes released her dower, then she was equitably entitled to the then present value, and no more, and that to be presently paid in gross, or converted into an annuity. But this should not enlarge the dower. The appraisal of the brick store did not fix the value. The dowress was not bound by: it, and she in fact refused to be. If, in February, 1843, she had dower, or right in the subject of the store, as in dower, it existed in these forms, viz., 1. She had right to ground rent; and it may be,—2. She had right to come in with the reversioner by contributing her part of the cost of construction. That without such contribution she had estate of dower in the brick store will not, we suppose, be insisted. She had, then, no right, save the ground rent. As an annuity, nearly three times the value of this was reserved; and as a present value, the whole was $112,50, to secure which property worth from $1200,00 to $2000,00 was locked up indefinitely.

The lot, as a principal, or fee, is now, as at the decease of Frederic Pettes, part of his estate and unadministered, and can be effectively conveyed only by the present administrator, the orator; and the parties having apparent title should, on being equitably indemnified, be decreed to release to the orator, subject to the lien of Mrs. Pettes for whatever interest she has. Sargeant has no interest in the matter; as administrator he charged himself with the sum bid, at his own peril, and on both accounts rendered by him before the probate court he chose to be made liable; it was not an adjudication on controversy. He could not acquire any estate in the lot. The administrator can never be more than a trustee. Simonds stands, confessed, a trustee merely. And Mrs. Pettes, if she have rights, is *quasi* a mortgagee to the estate of Frederic Pettes. Sargeant's endeavors to convey something in the lot were utterly abortive. He had no power over the subject. When the first set of deeds was made, he had not even the semblance of title in his own right; and when, after suit, the second shift was made, he had been removed from the administration.

*Washburn & Marsh* for defendants.

As to the "Clement lot" the defences are in part several, and in part joint. Simonds is a mere stake holder, under personal liabilities, and having no interest, except to be indemnified. On the case as made by the orator, Sargeant and Mrs. Pettes insist,—

1. That Mrs. Pettes' right of dower was not extinguished, even at law, by the burning of the wooden building; that she was endowed in the cellar, the foundation, the land itself; on this she might erect a new building, by advancing (which is all the life estate is bound to do) one third of the expense of repairs; and if she advanced the whole, she would have a lien on the remaining two thirds for two thirds of the expense. And when the brick store was erected, her right of dower still remained in that. 4 Kent 66. 1 Story's Eq. 580. 2. That the *quality* of the estate, so far as the administrator is concerned, is determined by the inventory, in which Mrs. Pettes' right of dower is recognized. The inventory was made under the statute of 1821; and there is no allegation in the bill, which entitles the plaintiff to bring in question the truth of the inventory. 3. There is no pretence for asserting, that her right of dower has been extinguished by any agreement with F. Pettes, while living.

If the right of dower was not extinguished, the plaintiff cannot claim to annul the conveyance from Sargeant to Mrs. Pettes. For her release of this right of dower was the consideration of the deed by Sargeant to her, as stated in the bill and admitted in the answer.

And as to Sargeant the sale cannot be annulled, so as to reclaim the property as estate not administered. 1. The claim was recognized by F. Pettes, while living, as existing in its full value; to whose acts Sargeant, as also the plaintiff, are privy, and by which they are bound. 2. The recognition of the claim by Sargeant was *bona fide.* 3. The right of Mrs. Pettes, under the sale, is concluded, at law and in equity, as *res adjudicata.* (1.) By the order of sale he had the right to sell; and when sold the avails became matters of *account.* (2.) The administrator may sell to a trustee for his own use,—which is good, if not objected to,—which can only be for *fraud,* or for *inadequacy of price,* and then upon the administrator's *accounting.* (3.) The accounting for the proceeds is, as to the estate, *payment.* (4.) The judgment upon the account has passed

XXIII.  60

into a second decree of dividend to the creditors, in which the plaintiff has no interest; it is the separate right of the creditors; and as to the estate it is, as to so much, the end of administration. (5.) The plaintiff has himself affirmed the sale, by taking the decree against Sargeant for the interest upon the $960,00, as part of the second accounting. (6.) The sureties and dividend creditors, in their own right, have the superior equity; and this sustains the conveyance in trust for their benefit. 4. The suit is wholly for the benefit of the Bank of Windsor, and the object is, to draw back the "Clement lot" to pay their dividend. The bill alleges, that the other dividends are unpaid; but this is not put in issue by the answer, and is not proved. Sargeant not having sold for cash in hand, the sale was at his risk, and so far the land became, in equity, his property. The only claim of Mrs. Pettes was to the extent of her mortgage, under which she is entitled to protect her legal and equitable rights. An equity in dower is superior to all others. *Power v. Sheil,* 1 Molloy 296, [12 Cond. Ch. R. 147.] The only claim of Simonds is to be indemnified from his mortgage. As to the residue the estate was held in trust for Sargeant. And for this the bank had a full remedy at law, by levy of their execution. And having levied their execution, the right of dower might have been contested at law, where alone it can be determined in the first instance. 4 Kent 71. 1 Story's Eq. 577.

The opinion of the court was delivered by

REDFIELD, J. The only questions, argued in the present case, regard the liability of the "Clement Lot" to be treated as still a part of the assets of the estate of Frederic Pettes. This is resisted upon numerous grounds, none of which seem altogether satisfactory to this court. We shall dispose of them as briefly as possible.

I. In regard to Mrs. Pettes' claim, it may be said, that there is no necessity of treating her dower in the brick store and the land as extinguished, at law even, in order to grant the relief asked for. That seems to us a secondary question altogether. Allowing that she had a subsisting interest in that lot at the time of the sale to Marsh, (which is altogether problematical,) it must appear, that some portion of the avails of the sale of that interest has gone to the benefit of the estate of Frederic Pettes, in order to give her any

equitable lien upon the "Clement Lot," as a mortgage; and she claimed no other interest, during her life time. She never had and never *claimed* any interest as *purchaser*.

And in order to answer the purpose of giving her an equity to hold the "Clement lot" against the creditors of Frederic Pettes' estate, her money must have actually been *paid over to them*. For Sargeant, as administrator, had no authority to buy her interest in the brick store and lot, and mortgage the real estate of his intestate to pay for the same, by way of annuity, during her life. And being bound to know the law, she had no right to make any such contract with him, as administrator; and if she did, it was at her own peril. He became her agent in receiving the money of Marsh, (even assuming that it was her money,) and he held it as her agent, until he actually paid it over to the creditors, unless the judgment of the probate court has changed the matter,—which we shall hereafter examine. And the defendants having waived a hearing before the master, it must now be treated the same, as if it were found, that none of the avails of Mrs. Pettes' estate in the brick store went to the creditors of Frederic Pettes.

Jabez Sargeant, then, being merely the debtor of Mrs. Pettes for the avails of her dower in the brick store and lot, could not mortgage the property of the estate to secure that debt. And the transaction, by which the title of the "Clement lot" was conveyed to the defendant Simonds to secure the payment of an annuity to Mrs. Pettes and the remainder in trust for Sargeant, is nothing more, or less, than applying the property of the estate to secure his own debt. And Mrs. Pettes, knowing all the facts, is bound to know the law arising upon the facts. We do not think it necessary, then, to go into the inquiry, what interest Mrs. Pettes had in the brick store and lot. This disposes of all equity in Mrs. Pettes, as superior to Sargeant.

II. It is claimed, that Sargeant had an absolute title to the "Clement lot." If so, his proceeding since the commencement of this suit, under the advice of counsel, by which he declared a trust for the remainder, after securing Mrs. Pettes, in favor of the creditors of Frederic Pettes, was certainly most remarkable. It must either have resulted from wrong advice, or a consciousness of some moral or equitable infirmity in his title. But aside from that,—

1. The administrator has no right to become a purchaser of the estate, upon which he administers, even when he is solvent and pays the full price. And if he do so indirectly, it is competent for those interested in the estate, upon discovering such purchase to be for his benefit, or in a reasonable time thereafter, to compel a re-sale,— or they may elect to treat him as a purchaser.

2. It cannot be said, that the passing of the administration account and charging Sargeant with the amount of this sale concludes the estate. For that is a thing done by Sargeant himself, where he is in fact both plaintiff and defendant. And in a late case in Addison county, *Heirs of Adams* v. *Adams et al., Adm'rs*, 22 Vt. 50, such an accounting was held to be of no force, as against a proceeding in equity. And if it be said, that such a judgment cannot be attacked thus collaterally, it should be borne in mind, that this came in by way of defence, and is not pleaded by way of estoppel, but only by way of recital; and in such cases the judgment is merely evidence, to have such effect as the triers of the matter of fact deem reasonable,—which in most cases is indeed regarded as conclusive, but in the present case could not be esteemed of any force, because the estate was represented, on that occasion, by Sargeant, who was the only party in interest adverse to them; and the creditors were evidently not aware of his insolvency and that of his bail, or that he would not pay over the amount of the sale. And in the very same answer, Sargeant sets forth his having now conveyed the remainder of the estate to Simonds, in trust for the creditors of the estate,— thus, in effect, waiving all benefit of being charged in his administration account with the price of it.

As to his being charged with interest on the price, in his second account, that is a mere collateral matter, and of no force, except as matter of evidence, and not satisfactory in that view. We cannot suppose it was the intention of the present administrator thus to ratify the sale; for it was either since or just about the time of the institution of the suit, December, 1843,—the subpœna to the bill being dated December 1, 1843. This item of interest might have been allowed, as rent actually received by Sargeant, or which he ought to have received, between the time of the sale in February, 1841, and the second accounting.

As to the charging Sargeant in his second account with money

received on the $500,00 note, given for what he claimed as Mrs. Pettes' interest in the brick store, it passed doubtless on the ground, that she did not regard it as her property, and that it was in fact the property of the estate. And it is supposable, and even probable, that it might have been allowed on the ground, that Mrs. Pettes in fact had no interest whatever in the brick store,—which was most undoubtedly the fact,—and her interest in the land (if she had not relinquished it, which is more than probable) was less than the balance of the note, which Sargeant sold and received pay for and never accounted for, even in form.

As to the decree of dividend, it is but a portion of the judgment passing the administration account, and merits the same consideration only. The orator is the proper person to bring this bill; it is a proper matter for the consideration of a court of equity, involving both matter of trust and of fraud, both of which are eminently matters within the proper cognizance of such court. We entertain no doubt the probate court will be able to so distribute this estate, as to do justice among the creditors. If Sargeant, or his sureties, should ever rise above their present state of security from insolvency, so that the fact, that the price of this land is included in his account, is of any practical importance to them, the probate court, or a court of equity, will readily set the matter in a safe condition. This property has not fairly and fully been administered upon, until it reaches it ultimate destination, the hands of the just creditors. The sureties of Sargeant have no equity superior to that of Sargeant, as to this estate. We think, there was no adequate remedy at law.

We think, therefore, that the decree of the court of chancery should be affirmed in all respects, and the case remanded to that court to be carried into effect.