STATE OF MISSOURI at the Relation and to the Use of ADDIE L. WHITLOW, Respondent, v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

Kansas City Court of Appeals, June 4, 1915.

1. PRINCIPAL AND SURETY: Executors and Administrators: Partnership. If an administrator takes property into his hands under color of his office, and fails to account for it, his surety is bound therefor even if, as a matter of fact, it was not in reality assets of the estate.

2. ————: ————: ————. The improper appointment of an administrator *de bonis non* does not affect the liability of his sureties, if the administrator acts under the appointment; and, even if the letters of administration are void, the bond is good as a common-law bond.

3. ————: ————: ————. Where an administrator purchases property at his own sale and at one-half of the appraised value, the same is void and as if it had never been.

4. ————: ————: **Final Settlement.** In passing on the final settlement of an estate the probate court has power to go into all past accounts and settlements and correct any errors or invalidities anywhere throughout the administration.

Appeal from Cooper Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*W. G. & G. T. Pendleton* for appellant.

*W. M. Williams* and *John Cosgrove* for respondent.

TRIMBLE, J.—This is a suit against a surety on the bond of an administrator of a partnership estate.

Addie L. Whitlow, at whose relation the suit is brought, is the sole heir, devisee and executrix of her father, Warner Whitlow, who died in Cooper county, Missouri, July 28, 1904. She administered upon and fully settled said estate and became entitled to receive all the property and assets thereof. Prior to her father's death he had secured the contract to do certain work on the "White River Extension" of the Missouri Pacific Railway in Arkansas. Desiring to have Joseph W. Skinner to superintend this work, Whitlow and Skinner entered into an agreement whereby Skinner agreed to superintend the work and the two would divide the profits. The work was completed in 1904 and Skinner, with Whitlow's consent took the paraphernalia, known as the "grading outfit" consisting of horses, mules, wagons, pile driver, blankets, scrapers, harness, etc., to St. Louis.

On August 11, 1904, directly after Whitlow's death, Skinner on his application was appointed administrator of the partnership composed of Whitlow and Skinner, and gave bond in the sum of $2500 with the defendant as surety thereon. On August 23, 1904, Skinner inventoried the grading outfit and filed it in the probate court September 6, 1904, stating therein that Warner Whitlow had a half interest in said property and Joseph W. Skinner owned the other half interest. This property was appraised at $1500.

Skinner continued to use the grading outfit until February 15, 1905, when the probate court, on motion of Miss Whitlow, ordered him to sell it. He did so and reported to the court that he had sold it for $750 to O. Guinand. On April 13, 1905, the probate court approved the sale. No other report or settlement was made until January 15, 1907. Skinner reported earnings of the teams, etc., from July, 1904, to January, 1905, at $2870 and took credit for expense in keeping the teams and wages paid the teamsters to the amount of $2622.87.

A claim was then presented against the partnership estate by Mr. Skinner's wife which Miss Whitlow resisted and it was finally disallowed. Thereupon, in April, 1910, Skinner filed his final settlement in the probate court of the city of St. Louis showing a balance of something over $750 in his hands for distribution which was ordered to be divided between Miss Whitlow and Mr. Skinner. The former appealed the case to the circuit court and from thence to the St. Louis Court of Appeals, where it was decided that the "grading outfit" was owned entirely by Whitlow and was not partnership property although a partnership did exist as to the profits to be made out of the railroad contract, but that no profits were in fact made. The cause was then remanded with directions. [In re Warner Whitlow, 184 Mo. App. 229.] Pursuant

to these, the probate court rendered judgment on October 16, 1914, directing Skinner, the administrator, to turn over the property, or the value thereof, to Miss Whitlow and upon compliance therewith that said Skinner stand discharged as such administrator. No appeal was taken from this judgment; and, although it is still in full force and effect, the administrator has never complied with its terms. He became insolvent and has been and is now a nonresident of the State.

This suit was brought in 1910 shortly after Skinner's final settlement was filed. It was tried in 1914 before the court without a jury and judgment was rendered for the full penalty of the bond, $2500, to be satisfied by the payment of $1500 the amount of damages found by the court.

This suit on the bond is for the value of the property taken by Skinner, as administrator of the partnership estate, but which in fact, as afterwards found by the St. Louis Court of Appeals, belonged solely to Whitlow. The answer admitted the appointment of Skinner as administrator of the partnership estate, the execution of the bond and that Skinner took possession of the property sued for, but set up that said property belonged to Whitlow individually and not to the partnership firm; that the same was sold by the administrator under an order of court moved for by relatrix and that she acquiesced in the sale and is now estopped to dispute its validity and is concluded as to the value of the property by the amount for which it sold. The answer further admitted that said Skinner has not delivered the property or its value to relatrix, the owner thereof, and that he is insolvent; and set up the claim that, since the property converted by Skinner did not belong to the partnership estate, defendant is not liable for any conversion thereof by the administrator.

The reply charged that Skinner claimed the property as administrator and held it as such and as

belonging to the partnership estate; that defendant
executed the bond sued on knowing these facts, and
that said Skinner kept the estate open for over ten
years during which time defendant received premiums
to indemnify it for the risk it assumed as bondsman
of said administrator and made no effort to cause
Skinner to settle said estate, and was, therefore, es-
topped to deny its liability on the bond sued on; that
the probate court finally determined that relatrix was
entitled to the property taken over by the administra-
tor, or the value thereof, and that said judgment is
now a finality. Said reply further denied that relatrix,
at the time the property was sold, knew Skinner had
no interest therein.

The first contention made by appellant, the surety
company, is that it cannot be held liable for the mis-
appropriation by the administrator of property which
was not in fact assets of the estate, and that since
the St. Louis Court of Appeals held that the partner-
ship estate did not own the grading outfit, the surety
cannot be liable for the value thereof. Undoubtedly
the circumstances of this case show that the adminis-
trator claimed and continued to hold said property by
*color of his office,* and that the bond given enabled him
to hold and dispose of such property and maintained
his claim for the years that he did. He not only ob-
tained and held possession by color of his office but his
claim was of such a nature as only a court of last re-
sort could finally determine. In other words, the
color of office by which he held possession was plausible
and apparently good; it was not a plain and unques-
tioned wrongful exercise of authority. Whatever may
be the rule in other States, it seems that in Missouri
the rule is that if an administrator takes property into
his hands under color of his office and fails to ac-
count for it, his surety is bound therefor even if, as
a matter of fact, it was not in reality assets of the
estate. [Gamble v. Gibson, 59 Mo. 585, l. c. 594; Dix

v. Morris, 66 Mo. 514; Lewis v. Carsono, 93 Mo. 587,
l. c. 592; In re estate of Soulard, 141 Mo. 642, l. c.
672; McPike v. McPike, 111 Mo. 216; State ex rel. v.
Purdy, 67 Mo. 89, l. c. 94; State ex rel. v. Scholl, 47
Mo. 84.] To hold the surety liable in this case does
not extend the liability of a surety beyond the limits
set by the above cases nor does it extend the liability
beyond the limits contemplated by the parties when
the surety obligation was entered into. The property
could only be held and claimed by Skinner in his ca-
pacity as administrator. There was no foundation
for any right in him as an individual whatever. Con-
sequently, it was only through his official standing as
administrator that he could assert a right to take pos-
session of it and continue in his assertion of the right
to dispose of it. Under the Missouri rule this renders
his surety liable for his conversion thereof. It has
been held elsewhere that the improper appointment of
an administrator *de bonis non* does not affect the lia-
bility of his sureties if the administrator acts under
the appointment. Shalter's Appeal, 43 Pa. St. 83;
also that even if letters of administration are void
the bond is good as a common law bond. [Williams
v. Kierman, 25 Hun (N. Y.), 355; 11 Am. & Eng. Ency.
of Law (2 Ed.), 880.]

It is next asserted that, if the surety is liable at
all, it is only so for the proceeds of the sale of the
property and not for its reasonable value.

The evidence tends to show that when the prop-
erty was sold by the administrator under the order of
the probate court, he in fact sold it to himself. He
reported the sale as having been made to Guinand.
This man was his brother-in-law. The evidence is that
he was wholly unable financially to buy the property;
that he was not present when it was sold but it was in
fact bid off by another; that the administrator did not
receive any money from him but, if he took anything
at all, merely took his unsecured note therefor, and

instead of delivering the property to him, the administrator took the outfit over to Illinois and used it in his own business and as his own property. The evidence was ample to support the finding of the trial court that the administrator purchased at his own sale and at one-half the appraised value. This rendered the sale void and as if it had never been. [Ryden v. Jones, 1 Hawk. (N. C.) 497; Dwight v. Blackmar, 2 Mich. 330; Green v. Sargeant, 23 Vt. 466.] The administrator had no right to continue to use the property and charge the expenses of keeping it against the estate. [Richardson v. O'Connell, 88 Mo. App. 12; Exchange Bank v. Tracy, 77 Mo. 594.] And in order to stop that procedure the relatrix moved that the administrator be required to sell it. This was clearly a rightful move on her part. In asking that it be sold, she committed no wrong; she did not, by so doing, induce the administrator to sell to himself nor to do any other fraudulent or wrongful act in connection herewith. She did not induce the administrator to change his situation for the worse. He did not sell it in fact, but merely went through the form of a sale, and thereafter kept the estate open for a number of years until he had succeeded in getting away with the property. Nothing that relatrix did caused the surety to forego any of its rights. The evidence does not show that relatrix knew the sale was void or that it could be impeached after time it was made, or that it could be impeached during the years that followed. Certainly it does not show this fact conclusively so as to enable us to disagree with the trial court on that fact. So far as the fact that the property did not belong to the estate is concerned, surely relatrix ought not to be charged with failure to establish that fact any sooner since the administrator, supported tacitly at least by his surety, was steadily opposing any such effort. The failure to impeach the sale had nothing to do with its invalidity, and unless we can say the evidence con-

clusively shows relatrix was aware of the imperfections of the sale, we cannot say, as matter of law, that she slept on her rights and allowed the surety's status to be injuriously affected. If she did not do this, then she is not estopped because she asked that the property be ordered sold, since she did only what she had a right to do and neither the administrator nor his surety was led to change position. [Weir v. Cordz-Fisher Lumber Co., 186 Mo. 388, l. c. 396; Konta v. St. Louis Stock Exchange, 189 Mo. 26, l. c. 39; Blodgett v. Perry, 97 Mo. 263; Fowler v. Carr, 63 Mo. App. 486.]

The probate court of the city of St. Louis, obeying the mandate of the St. Louis Court of Appeals rendered judgment on the final settlement of said estate. That judgment, being unappealed from, is conclusive on appellant as a surety on the bond of Skinner. [Dix v. Morris, 66 Mo. 514; State ex rel. v. Creusbauer, 68 Mo. 254, l. c. 257; State ex rel. v. Shipman, 87 Mo. App. 569.] In passing on the final settlement, said probate court had power to go into all past accounts and settlements and correct any errors or invalidities anywhere throughout the administration. [In re Davis extr. of Williams Estate, 62 Mo. 450; McPike v. McPike, 111 Mo. 216, l. c. 225; North v. Priest, 81 Mo. 561.]

The inventory and appraisement made and filed by the administrator fixing the value of the property at $1500 was evidence of its value at the time it went into the possession of said administrator. In addition to this, the witness Hogan testified it was worth $2000 and Judge Rust said he thought it was worth $1300. This evidence was sufficient to justify the trial court in fixing the value at $1500.

Under the circumstances of this case we see no grounds for interfering with the findings of the trial court; nor is there any reason, under the Missouri rule concerning the liability of a surety on an administrator's bond, for holding that the surety herein is

not liable for the value of the property which came into the administrator's hands under color of his office and which he wrongfully dissipated and converted to his own use. The judgment is, therefore, affirmed. All concur.