STATE OF MISSOURI at the relation and to the use of CORA M. GNEKOW, Relator Appellant-Relator Respondent, v. UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Defendant Respondent-Defendant Appellant.—163 S. W. (2d) 86.

Division One, April 16, 1942.

Rehearing Denied, June 3, 1942.

*J. M. Massengill* and *John P. Griffin* for relator.

*Carter & Small, James E. Garstang, Blanton & Montgomery* and *Harry C. Blanton* for United States Fidelity & Guaranty Company.

HYDE, C.—This action is on the administrator's bond of George W. Kirk, as administrator of the estate of E. L. Griffin, de-

ceased, against defendant surety only. Judgment was rendered for the full penalty of the bond ($6000.00) to be satisfied upon payment. of $1213.45 and costs, consisting of items, as follows: Principal, $935.96; interest, $127.49; attorneys' fees, $150.00. Both parties appealed; relator on inadequacy of attorneys' fees and failure to allow additional damages for vexatious refusal to pay; and defendant upon any judgment in excess of $697.08, which was tendered.

The appeals went to the St. Louis Court of Appeals, which affirmed the judgment, but the case was certified here on dissent of one of the judges. [State ex rel. Gnekow v. U. S. Fidelity & Guaranty Co., 150 S. W. (2d) 581.] Relator was the divorced wife of E. L. Griffin and made claim as beneficiary in a policy issued by the Metropolitan Life Insurance Company for the amount thereof, which was also claimed by the administrator. The Insurance Company paid the same into court by interpleader, amounting with costs deducted, to $935.96. The circuit court awarded the fund to the administrator and this judgment was affirmed on appeal by the St. Louis Court of Appeals. [Gnekow v. Metropolitan Life Ins. Co., 99 S. W. (2d) 126.] This appeal was taken without giving an appeal bond and while it was pending the administrator demanded and received the fund from the circuit clerk. Thereafter, on certiorari to this Court, the opinion of the St. Louis Court of Appeals was quashed in part. [State ex rel. Gnekow v. Hostetter, 340 Mo. 1177, 105 S. W. (2d) 928.] Thereafter, the St. Louis Court of Appeals, in another opinion, reversed the circuit court's judgment and directed that a judgment be entered awarding the funds to relator [Gnekow v. Metropolitan Life Ins. Co., 108 S. W. (2d) 621]. After final judgment on the mandate, relator demanded the full amount of the fund from the administrator. The administrator tendered $697.08, the entire amount remaining in his hands as administrator after payment of fees and allowances authorized by orders of the probate court. Relator brought this suit against defendant as surety on the administrator's bond, and the tender of $697.08 was renewed herein by defendant. The bond was in the form provided by statute. [Sec. 19, R. S. 1939; Sec. 19, Mo. Stat. Ann. 19.] The case was tried on an agreed statement of facts, all facts as stated in the pleadings being admitted.

 The question for decision is: If an administrator takes property, actually owned by some third person, under the claim that it is an estate asset and puts it (or its proceeds if he converts it to cash) into the estate, can the owner recover from the surety on the administrator's bond, after final determination that it is not an estate asset, when the administrator refuses to make full restitution?

There are two distinct lines of authority on this question, as follows:

The surety is held not liable in an action on the bond because "the sureties on the bond of an administrator are only liable for a due accounting by their principal for assets of the estate, and the prin-

cipal cannot extend their liability by taking possession of property which is not assets of the estate." [Commercial Nursery Co. v. Ivey, 164 Tenn. 502, 51 S. W. (2d) 238.]

The surety is held liable in action on the bond because "all moneys received under color of official authority (as administrator) are covered by the bond." [Parker v. Potter, 204 N. C. 407, 168 S. E. 490.]

The cases based upon each of these propositions may be found in 104 A. L. R. 180, annotation, which demonstrates the existing confusion. [See, also 21 Am. Jur. 787, sec. 723 et seq.; 24 C. J. 1063, sec. 2547 et seq.] There are Missouri cases which seem to take both sides. For reasons hereinafter explained, we think both propositions are too broadly stated.

In Emmons v. Gordon, 140 Mo. 490, 41 S. W. 998, the question was "whether or not Gordon and his sureties can be held liable upon his bond as executor for moneys received by him for Texas lands which were sold and deeded by him to the purchasers thereof, as such executor," when "he failed to account for $1529.74 of the purchase price which was received by him." This court held that, since "the real estate of a deceased person descends, upon his death to his heirs, or passes to the devisees under the will" and "an administrator's power as such does not extend beyond the boundaries of the State in which his letters of administration are granted," therefore, "Gordon's sales of the lands (in Texas) were without authority, passed no title, and he and his sureties upon his bond as executor are not responsible for the moneys received by him in consideration for such sales." [For same ruling see Cabanne v. Skinker, 56 Mo. 357; McPike v. McPike, 111 Mo. 216, 20 S. W. 12; Bank of Seneca v. Morrison, 200 Mo. App. 169, 204 S. W. 1119.] This line of cases would seem to limit the sureties' liability to a proper accounting by the administrator for such property as is actually assets of the estate.

On the other hand, while recognizing the rule that real estate descends to the heirs, this court said, in Lewis v. Carson, 93 Mo. 587, 3 S. W. 483: "Although the administrator or executor takes possession of real estate (in this State) and collects the rents arising therefrom without an order of the probate court, he and his sureties on his bond must account therefor;" and held "that the administrator and his sureties are accountable for the proper application of the proceeds of the sale of the two and one-half acres" (in this State) because "he received the proceeds and disbursed them (for legacies) under color of his office" (without paying all debts) and such a sale could have been authorized (under statutory authority) by proper order of the probate court. [See also Gamble v. Gibson, 59 Mo. 585; Dix v. Morris, 66 Mo. 514; State ex rel. Whitlow v. American Surety Co., 191 Mo. App. 191, 177 S. W. 1074; Nye v. U. S. Fidelity & Guaranty Co., 225 Mo. App. 593, 37 S. W. (2d) 988.] The Nye case held

that a petition stated a cause of action, on the administrator's bond, which only alleged relator's ownership of bonds held by the administrator without showing any final determination of the question of ownership. This line of cases would seem to expand the liability of the sureties to cover anything which improperly or wrongfully comes into the possession of the administrator by a claim under color of his office whether the estate was actually so increased thereby or not.

We think the language of these cases is too broad. [See Webber v. Detroit Fidelity & Surety Co., 263 Mich. 144, 248 N. W. 576.] It is true that, as pointed out in the Nye case, recovery was allowed in the Whitlow case ''much in excess of the amount by which the estate was benefited by the sale of the property,'' which belonged to a third party but was commingled with the assets of the estate. However, in the Whitlow case the question of the relator's ownership of the property, taken by the administrator, had been decided by a judgment, entered after appeal. [In re Warner Whitlow, 184 Mo. App. 229, 167 S. W. 463.] Moreover, the sale therein was a sham by which the administrator actually bought at his own sale for half the appraised value of the property. Therefore, a sufficient basis for allowing recovery, for the full appraised value from his sureties, was to consider the transaction as the same as a conversion by the administrator of assets of the estate to his own use, resulting in depriving the estate of the full appraised value thereof which went into it. Likewise, in the Nye case, it seems to be the reasonable inference from the facts stated that the full value of the bonds sued for went into and increased to that extent the assets of the estate, and that such value was still there. Furthermore, in Emmons v. Gordon (and the other cases concerning land in other states), the statements made are likewise to be limited by the facts involved. In those cases, recovery was sought in order to put proceeds of the sale or rents of foreign lands into the estate. So if such land was not an asset which could belong to the estate, then the estate would not be deprived of anything by any failure to account for the proceeds of such rents or sales. Therefore, it seems in all these situations the guiding principle really is, and we think must be, actual benefit or loss to the estate. In other words, was the estate actually increased by assets to which it was not entitled? Or was it actually decreased by withholding from it any assets to which it was entitled?

In the latter situation, if nothing was withheld from the estate which could belong to it, of course neither the administrator nor his sureties should be liable. In that situation, therefore, the proper inquiry is whether or not the assets in question were actually estate assets and this determines liability on the bond. However, in the other situation, when the estate has actually been increased by the value of assets put into it by the administrator which belong to a third party, then it has something to which it has no right, and such

third party surely ought to be able to obtain his property or its value. Is not the general statement that the bond does not cover property, which is not an estate asset, then inapplicable? The estate *has* his property and it is not entitled to keep it. If the administrator still has the specific property, the owner may maintain a suit in replevin for it against the administrator in his official capacity. [White v. McFarland, 148 Mo. App. 338, 128 S. W. 23.] If the administrator has sold it "and receives and uses the proceeds as part of said estate a court of equity would afford relief to the owner by decreeing payment to be made for such property out of the funds of the estate." (Or like a preference claim against a closed bank, if the estate is insolvent.) [Silsby v. Wickersham, 171 Mo. App. 128, 155 S. W. 1094.] Neither remedy would be fully adequate here; the latter would not be because the estate does not still have all of relator's money, the amount left in the estate being less than relator's claim. Therefore, we ▮▮ think that relator should have the remedy sought on the bond, on the principle applied in State to the Use of Walsh v. Farrar, 77 Mo. 175. [See also State to Use of Walsh v. Dailey, 7 Mo. App. 548.] There the administrator (Dailey) obtained property for 'the estate by replevin claiming it as an estate asset. The court finally decided the case against him, giving judgment to the owner for the value of his property so taken from him. The surety on the administrator's replevin bond had to pay the full amount of this judgment; and he was allowed to recover the amount thus paid, by his suit on the administrator's bond.

In so ruling this Court said:

"Dailey (as administrator) having by means of the replevin suit become possessed of property as belonging to the estate, which the circuit court decided did not belong to it, it was his duty as administrator to pay the value thereof to its owner. And the plaintiff having paid it for him under the judgment of the circuit court, became subrogated *ipso facto,* to all the rights of Patrick Roddy (the owner), to whom restitution should in the first instance have been made. Now the claim of Patrick Roddy to reimbursement did not constitute a demand which could be allowed against the estate of James Roddy, but it was a claim against Dailey in his official capacity, arising out of the improvident exercise of his official functions, which it was his official duty as administrator to pay, and for a breach of which duty, the sureties on his bond are liable."

The prescribed statutory obligations (which this bond contained) are: (1) Faithfully administer said estate; (2) account for, pay and deliver all money and property of said estate; and (3) perform all other things touching said administration required by law or by the order or decree of any court having jurisdiction. We think that failure to hold this fund intact (when litigation was still pending to determine its ownership) could be reasonably said to be a breach of

the obligation to faithfully administer said estate, similar to waste as the Court of Appeals pointed out in the Walsh case. That was in effect the holding in the North Carolina case (168 S. E. 490) where the statutory bond provided: ''Faithfully execute the trust reposed in him, etc.,'' according to State ex rel. Lafferty v. Young (N. C.), 34 S. E. 444. The administrator here properly participated in the litigation to determine the ownership of the fund, paid into court by the Insurance Company; but, when he took possession of the fund before the litigation was ended, he thereby created an obligation to return the full amount collected (which could be enforced against the estate as hereinabove shown) if the final decision was against him. If he had kept the fund intact, or kept sufficient funds in the estate to return it (by keeping expenses and costs within unquestioned estate assets until the question was settled), neither the owner nor the estate could have been damaged. Failure to do so would not only prejudice the rights of the owner, as an involuntary creditor or equitable claimant against the estate, but would also subject the estate to liability by suit with incident costs, expense and delay. We hold that the obligation of faithful administration placed such a duty upon him (to protect both the estate and the owner) and that failure to do so was a breach of this obligation of his bond for which sureties thereon are liable. Since it is the policy of our administration code, and in accordance with enlightened justice to prevent useless multiplicity of suits and circuity of action, we further hold that liability on the bond accrues when the question of ownership is finally determined against the estate and the administrator refuses to make restitution. In so far as the Nye case goes further and authorizes a suit on the bond before the question of ownership is determined (unless ownership has been admitted), we hold that it should be disapproved.

However, because of the confusion of the authorities both in this State and throughout the country, we think the surety was justified in litigating the main question. Likewise, the question of liability on the bond in any amount in excess of the amount of assets remaining in the estate after payment of administration costs and expense allowed by the probate court (which was tendered) was not presented by the facts in the Nye case and had not been settled. [For conflict of authorities on estate and bond liability for conversion of property see 21 Am. Jur. 555, sec. 306; Annotation 44 A. L. R. 637; Annotation 127 A. L. R. 687.] These were certainly debatable legal questions. Vexatious delay penalties ''must be supported by a showing of obstructing a beneficiary by refusing to pay without reasonable or probable cause or excuse. [Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S. W. (2d) 474; Camdenton Consolidated School District v. New York Casualty Co., 340 Mo. 1070, 104 S. W. (2d) 319, and cases cited.] We hold that the showing here was not sufficient.

The judgment as to the principal sum of $935.96 and interest is affirmed; and the allowance for attorneys' fees is reversed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.