Kenneth A. STARK, Plaintiff-Appellant,

v.

Corliss J. MOFFIT, Individually; J. H. Middleton, as Administrator D.B.N. C.T.A. of the Estate of Francis R. Moffit, Deceased; M. D. King Milling Company, a Corporation; The Farmers Bank of Bowling Green, Missouri, a Missouri Banking Corporation; Woodson K. Woods III; and Escrow Fund in Farmers Bank of Bowling Green, Missouri, Defendants-Respondents.

No. 30848.

St. Louis Court of Appeals.

Missouri.

Nov. 27, 1961.

Van Matre & Van Matre, Everett S. Van Matre, Mexico, for plaintiff-appellant.

McIlroy & Millan, Bowling Green, Edward A. Glenn, Louisiana, William M. Turpin, Bowling Green, Richard S. Bull and Doris J. Banta, St. Louis, for respondents.

DOERNER, Commissioner.

Plaintiff instituted this action in the Circuit Court on November 18, 1960, by which he sought to obtain payment of the sum of $4,425 out of a fund held in escrow by defendant Farmers Bank of Bowling Green, Missouri. One of the defendants below was Corliss J. Moffit, Executrix of the Estate of Francis R. Moffit, Deceased. On the day argument was heard in this court the resignation of the Executrix and the appointment of her successor was suggested, and J. H. Middleton, Administrator D.B.N. C.T.A. of said Estate has been substituted in her stead. In the trial court the defendants filed a joint motion to dismiss plaintiff's petition, on the grounds that prior to the filing of this suit plaintiff had filed a claim in the Probate Court of Pike County against the Estate of Francis R.

Moffit based upon the same cause of action. Subsequently the court entered a judgment sustaining defendants' motion and dismissing plaintiff's petition, " ' * * * on the ground of priority of jurisdiction in the Probate Court * * *' " and plaintiff appealed.

■ As the court stated in its memorandum opinion, it is a well established rule that when a court of competent jurisdiction becomes possessed of a cause, its authority continues, subject only to the authority of a superior court, until the matter is finally and completely disposed of; and no court of concurrent jurisdiction may interfere with its action. State ex rel. Sullivan v. Reynolds, 209 Mo. 161, 107 S.W. 487, 15 L.R.A.,N.S., 963; In re Gaebler's Estate, Mo.App., 248 S.W.2d 12. This rule rests upon comity and the necessity of securing proper and orderly administration of justice to prevent vexation, oppression, harassment and unnecessary litigation. Any other rule would result in a multiplicity of suits and create unseemly, expensive and dangerous conflicts in the securing and execution of judgments. State ex rel. Sullivan v. Reynolds, supra; In re Gaebler's Estate, supra. It is stated in the latter authority (248 S.W.2d l. c. p. 15) that "In applying the rule above mentioned the proper test is: (1) whether there is a prior action between the same parties involving the same subject matter; and (2) whether the court in which the prior suit is pending has jurisdiction to render the particular relief sought in the subsequent action. Where the prior jurisdiction has terminated or is inadequate to afford the necessary relief, the assumption of jurisdiction by another court is permissible."

Plaintiff contends on appeal that the court erred in dismissing his petition because this action concerned other parties and different theories of law and equity than did his claim in the Probate Court, and because the Probate Court could not grant the relief sought by plaintiff in the Circuit Court. The determination of these questions requires a comparison between plaintiff's petition in this action and the claim previously filed by him in the Probate Court.

In substance, plaintiff alleged in his petition that on April 8, 1959, plaintiff and the defendant M. D. Milling Company, a corporation, entered into a written contract with the deceased, Francis R. Moffit, involving the raising of hogs for the market. By the terms of the contract, pleaded in full in plaintiff's petition, plaintiff was to furnish Moffit with 60 meat type gilts, and 2 meat type boars, as breeding stock, the title to which was to remain in plaintiff. Moffit agreed to feed and care for the hogs and their offspring, and to purchase the required feed from the Milling Company. The parties further agreed that as rent for the use of the breeding stock plaintiff was to receive one gilt of his selection from each litter of pigs farrowed; that the Milling Company was to have a lien on all offspring, exclusive of the rental gilt, for the feed purchased by Moffit for the swine covered by the agreement; and that after the payment of the cost of the feed, Moffit was to receive the balance of the proceeds from the sale of the offspring.

Plaintiff further alleged in his petition that he had furnished the breeding stock to Moffit, as provided by said contract, and that at the time he died Moffit was in possession of 5 sows and 81 gilts belonging to plaintiff; that Corliss J. Moffit had been appointed executrix of his estate by the Probate Court of Pike County on or about March 15, 1960, and was still so serving; that against the will of the plaintiff said Corliss J. Moffit " * * * individually and as Executrix of the estate of Francis R. Moffit unlawfully converted said swine and sold them for cash against the will of plaintiff, and deposited said cash in escrow with the Farmers Bank of Bowling Green as hereinafter more fully set forth * * *"; and that plaintiff's swine were reasonably worth, and brought at the sale, the sum of $4,425, which was held in escrow by the defendant Bank.

Plaintiff's petition also set forth in full the terms of the escrow agreement, dated April 14, 1960, between the defendant Milling Company and the defendant Farmers Bank, as parties of the first part; Corliss J. Moffit, Executrix of Moffit's estate, as party of the second part; and the Farmers Bank, as escrow agent, party of the third part. After referring to the agreement between plaintiff and the Milling Company, and Moffit, it was stated in the escrow agreement that at the time of Moffit's death, on March 11, 1960, " * * * there was on hand hogs and off-springs from said gilts delivered by Kenneth A. Stark under the above mentioned agreement, * * * " and also there were on hand certain sows, boars and pigs upon which the Bank claimed a lien by virtue of a promissory note executed by Moffit, secured by a chattel mortgage; that Moffit was indebted to the Milling Company for purchases, for which it claimed a lien; and that the Executrix was unable to admit or deny the liens claimed by the Bank and the Milling Company. The substance of the agreement was that the Executrix was to sell all of the hogs for cash and to deposit the proceeds in escrow with the Bank, which was to hold the funds in escrow " * * * until the final determination of the liens and other claims on said hogs." The escrow agreement further provided that the Executrix did not admit that the liens claimed by the Milling Company and the Bank were valid, and that " * * * in the event during the process of this administration it should be determined by proper Court Order or litigation that other persons have some claim on the proceeds of the said sale, or that the said Parties of the First Part are not entitled to all or any part of said proceeds, then in that event, the Party of the Third Part shall deliver the proceeds to the parties which are entitled to said proceeds, whether it be either or both of said First Parties or any other persons, in the proportion to which any of said persons are entitled."

Plaintiff also alleged that to the extent of $4,425 the escrow fund was composed of the proceeds of the sale of plaintiff's hogs, which had been sold by the Executrix; that the defendants Corliss J. Moffit, individually and as Executrix, the Bank, the Milling Company, and Woodson K. Woods III, (Moffit's landlord), were each making a claim to the fund, but that neither of them had an interest therein except as to any portion of the fund in excess of $4,-425; that Moffit's estate was believed to be insolvent and plaintiff would be greatly prejudiced by the placing of his property in the estate in that he would receive only a portion of said amount allowed as a claim against such estate; that to permit the estate to take plaintiff's property and convert it would be unconscionable and unjust, all to the end that the court, under its equitable powers, should afford plaintiff relief by decreeing that plaintiff was entitled to the escrow fund to the extent of $4,425; and that plaintiff had no adequate remedy at law. Plaintiff prayed that the defendants be enjoined from making any disposal or disposition of the escrow fund pending final disposition of the cause, and that the court enter a decree finding plaintiff the owner of $4,425 of the escrow fund and ordering the Bank to pay said sum to plaintiff out of the fund.

The joint motion of defendants to dismiss plaintiff's petition was supported by a copy of the claim plaintiff had previously filed in the Probate Court. In his claim plaintiff referred to the hog raising contract (which was attached to the claim as an exhibit); alleged that the plaintiff had placed the breeding stock with the deceased; that the Executrix was fully informed and had full knowledge of the arrangement; that at the time of the deceased's death he had on hand 65 sows and 81 gilts belonging to the plaintiff; that all of the sows except 5 were delivered to plaintiff, and that the 5 sows and 81 gilts not delivered were reasonably worth $4,-425; and that said Corliss J. Moffit

"* * * did engage in a course to defeat said Stark's property rights and accruals thereunder and did render her self (sic) liable personally and in representative capacity to the amount that there might not be a recovery from the Estate of deceased, if so, and the failure to deliver the said gilts in kind and number as set out herein and the 5 sows of said Stark; that said Corliss J. Moffit, contrary to the law and rule against conversion, did convert the swine aforesaid and sell same with full knowledge in said Corliss J. Moffit, both in personal and representative capacity, to the injury and damage of said Stark and that by claim here against the estate, said Stark does not waive and does retain his lawful claim for all or any deficiency against her in said two capacities, whereas, as between the parties third party claims may not prevail. The claimant Kenneth A. Stark holds no security for said indebtedness."

■ Because of the various allegations in plaintiff's claim that Corliss J. Moffit had acted in her individual as well as in her representative capacity in converting plaintiff's swine, and had done so in bad faith, as well as the absence of any allegation that the proceeds from the sale of the hogs became part of the assets of the estate, it is doubtful whether the plaintiff's claim, unless amended, could have been allowed against the estate. White v. McFarland, 148 Mo.App. 338, 128 S.W. 23; Nye v. United States Fidelity & Guaranty Co., 225 Mo.App. 593, 37 S.W.2d 988; Gnekow, State ex rel. and to Use of, v. United States Fidelity & Guaranty Co., 349 Mo. 528, 163 S.W.2d 86. Assuming, however, that the allegations in plaintiff's claim were sufficient to justify its allowance against Moffit's estate, it is clear that the Probate Court lacked jurisdiction "* * * to render the particular relief sought in the subsequent action," In re Gaebler's Estate, Mo.App., 248 S.W. 12, 15. If plaintiff's claim in the Probate Court stated any cause of action against the estate it was one in the nature of trover and conversion. 89 C.J.S. Trover and Conversion § 48;

Detmer v. Miller, Mo.App., 220 S.W.2d 739. Such an action is one at law, by which a plaintiff seeks a money judgment for the value of the property converted. St. Louis Fixture & Show Case Co. v. F. W. Woolworth Co., 232 Mo.App. 10, 88 S.W.2d 254. Thus by his claim in the Probate Court plaintiff cast himself in the role of an ordinary creditor of the estate. Hax v. O'Donnell, 234 Mo.App. 636, 117 S.W.2d 667; O'Neal v. Patterson, Mo.App., 206 S.W. 596. The only parties were the plaintiff, on the one hand, and the estate, represented by the Executrix, on the other. Section 473.270; State ex rel. Lefholz v. McCracken, 231 Mo.App. 870, 95 S.W.2d 1239. Had plaintiff's claim been allowed it would have been a judgment in rem against the estate. Section 473.403; Wahl v. Murphy, Mo., 99 S.W.2d 32; First National Bank of Brush, Colo. v. Blessing, 231 Mo.App. 288, 98 S.W.2d 149. It would have had to have been classified in accordance with the statute on the classification of allowed demands. Section 473.397. And payment could only have been made out of the general assets of the estate, as far as they would go, in the order in which all claims were classified. Sec. 473.430. Plaintiff neither sought, nor could the Probate Court have granted, any priority or preference in the allowance or payment of his claim. Dietrich v. Jones, 227 Mo.App. 365, 53 S.W.2d 1059.

■ By his action in the Circuit Court plaintiff, in effect, sought to have Mrs. Moffit, individually and as Executrix, declared to be a trustee ex maleficio as to the proceeds realized from the sale of plaintiff's swine; to trace such proceeds into the escrow fund; to impress a lien or trust thereon for the amount of such proceeds; and to obtain payment thereof out of the escrow fund prior to and in preference over the other claimants to such fund. The issues thus presented and the relief sought were purely equitable in nature. It is well settled that a court of equity has jurisdiction of all questions relating to the establishment, enforcement, and protection and

preservation of a trust on real or personal property, 90 C.J.S. Trusts § 454; In re Frech's Estate, Mo., 347 S.W.2d 224. A probate court, on the other hand, is a court of limited, statutory jurisdiction, possessing only those powers expressly conferred by statute or those necessarily incident to the proper exercise of duties directly imposed. In re Frech's Estate, supra; State ex rel. Barlow v. Holtcamp, 322 Mo. 258, 14 S.W.2d 646. While it may, like other courts of law, consider and determine questions of an equitable nature incident to the exercise of its statutory powers, In re Franz' Estate, 359 Mo. 362, 221 S.W.2d 739; Johnston v. Grice, 272 Mo. 423, 199 S.W. 409; and may apply equitable principles in the adjudication of law cases, In re Christian Brinkop Real Estate Co., Mo. App., 215 S.W.2d 70; In re Oberman's Estate, Mo.App., 281 S.W.2d 549; nothing is more firmly settled than that it does not have purely equitable jurisdiction, Tracy v. Sluggett, 360 Mo. 1120, 232 S.W.2d 926; State ex rel. Baker v. Bird, 253 Mo. 569, 162 S.W. 119; nor jurisdiction to try issues which are purely equitable in nature and where the relief demanded is equitable. State ex rel. and to Use of Clay County State Bank v. Waltner, 346 Mo. 1138, 145 S.W.2d 152; Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S.W. 116. It does not have power to establish and enforce trusts, State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W. 2d 909; State ex rel. and to Use of Clay County State Bank v. Waltner, supra; nor does it have jurisdiction of a proceeding to trace and recover trust funds. Howard's Estate v. Howe, 344 Mo. 1245, 131 S.W.2d 517; Dietrich v. Jones, 227 Mo.App. 365, 53 S.W.2d 1059.

■ Defendants argue in their brief that "The Probate Courts have jurisdiction under the new Probate Code to determine equitable matters * * *" and point to Section 472.030 in support of their contention. That section does not sustain their position. What it provides is that a probate court "* * * has the same legal and equitable powers *to effectuate its jurisdiction* and to enforce its orders, judgments and decrees *in probate matters* as the circuit court has in other matters * * *." As the key words we have emphasized indicate, whatever equitable powers a probate court may exercise by virtue of that section must be employed in the discharge of its jurisdiction in probate matters. The clause is not a grant to probate courts of jurisdiction in purely equitable matters. In fact, as was said in Helliker v. Bram, Administrator of the Estate of Norman E. Thomas, Deceased, Mo., 277 S.W.2d 556, 561, with reference to Section 16, Article V of our constitution, V.A.M.S.: "The probate court, by virtue of this constitutional provision, is not a court of general jurisdiction, but its jurisdiction is circumscribed and restrained to those matters set out in Section 16, Article V, supra, and any legislative acts which attempt to extend such jurisdiction beyond that conferred would be violative of the constitution. * * *"

■ Defendants also contend that if the Probate Court allowed plaintiff's claim it could decree that it be paid out of the escrow fund. This would be, in effect, the establishment and enforcement of a trust in favor of plaintiff on the escrow fund, a purely equitable relief, and beyond the jurisdiction of the Probate Court. Howard's Estate v. Howe, supra; Gnekow, State ex rel. and to Use of, v. United States Fidelity & Guaranty Co., 349 Mo. 528, 163 S.W.2d 86; Dietrich v. Jones, supra; Silsby v. Wickersham, 171 Mo.App. 128, 155 S.W. 1094.

Lastly, defendants contend that the parties were the same in both proceedings. They concede that in this action they were named as "additional parties," but they state that "* * * they are not necessary parties to a determination of the issues." According to plaintiff's petition, each of the defendants, for one reason or another, is contending that he has an interest in or a lien on the escrow fund. If defendants

mean what they say, the court of equity could determine plaintiff's rights in the fund in derogation of defendants' claim thereto without giving defendants an opportunity to be heard. Unless defendants are prepared to concede plaintiff's right to the amount of $4,425 out of the escrow fund as being paramount and prior to any rights of their own, we can scarcely believe them to be seriously advocating the point.

Returning to the test laid down in In re Gaebler's Estate, supra, it is apparent that plaintiff's prior claim in the Probate Court does not involve the same parties nor the same subject matter as the action subsequently filed by him in the Circuit Court; and that the Probate Court does not have jurisdiction to render the particular relief sought in this action. It follows that the court erred in dismissing plaintiff's petition, and that the judgment should be reversed and the cause be remanded for further proceedings not inconsistent with the views expressed herein. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court. Accordingly, judgment is reversed and the cause remanded for further proceedings.

ANDERSON, P. J., RUDDY, J., and JOHN J. KELLY, Jr., Special Judge, concur.