In the Matter of the ESTATE of John W. MYERS, Deceased, Appellant.
Laclede Gas Company, a corporation, Petitioner-Respondent.

No. 31346.

St. Louis Court of Appeals.

Missouri.

June 14, 1963.

Motion for Rehearing or for Transfer to Supreme Court Denied
July 12, 1963.

W. W. Sleater, III, and Suelthaus & Krueger, St. Louis, for appellant.

Whittington & Whittington, Allen H. Whittington, St. Louis, for Laclede Gas Co.

RUDDY, Presiding Judge.

This proceeding originated in the Probate Court of the City of St. Louis. Petitioner, Laclede Gas Company, a corporation, respondent herein, sought to avail itself of the provisions of § 473.357, RSMo 1959, 25 V.A.M.S. This section of the statutes authorizes the Probate Court to determine title to personal property on the verified petition of a person alleging that decedent was not and that petitioner is the owner of the personal property described therein in the possession of the executor or administrator of the estate.

The petitioner alleged that it was the owner of a fund amounting to $1,423.44 in the possession of John W. Myers at the time of his death, which fund is now in the possession of Florence Myers, the Executrix of the Estate of John W. Myers, deceased. The Probate Court denied the petition and an appeal was taken by the petitioner to the Circuit Court of the City of St. Louis. The Circuit Court ruled in favor of the petitioner, from which ruling the Executrix of the decedent's estate took an appeal to this court.

An agreed stipulation of facts was filed in the Probate Court and the matter was tried in the Circuit Court on the same agreed facts. The relevant parts of the

stipulation of facts show that John W. Myers died on January 3, 1961, and at the time of his death was the sole owner of Myers Hardware and Paint Company located at 5350 Devonshire Avenue, St. Louis, Missouri.

On December 8, 1958, the decedent and the petitioner, Laclede Gas Company, entered into a written agreement. The pertinent parts of said agreement provided for the appointment of the decedent as one of the contracting agents of petitioner for the collection of bills for gas service and appliances on condition, among other things, that he keep a strict and correct account of all collections made on forms prepared and furnished by the petitioner; that he keep separate and distinct from the decedent's own funds and other property all moneys collected under the agreement and all papers and records pertaining to such collections; that he deliver each day to the petitioner at its office all the moneys collected on the previous day. Under the agreement decedent was to "hold in trust" for the petitioner all the moneys collected until such moneys were paid to the petitioner. Decedent had to keep the stubs removed from bills, so that a record of collections would be available in the event of loss of moneys by holdup, burglary, etc. For the performance of this collection service the decedent was to receive a stated compensation set out in the agreement.

It was further stipulated that prior to January 3, 1961, and subsequent to December 8, 1958, decedent had accepted payment of gas bills due to the petitioner and had made periodic remittances to the petitioner for these collections.

It was agreed that at the time of the death of John W. Myers he had collected but not remitted to the petitioner, Laclede Gas Company, the sum of $1,423.44, said amount of money having been paid to John W. Myers or to his employees by various customers of the petitioner, and that the said amount so collected had been deposited by the decedent in a bank account in the Southwest Bank of St. Louis carried in the name of John W. Myers, individually, "said account being subject to withdrawal upon checks bearing the signature of 'Myers Hardware Company by John W. Myers, or Florence E. Myers.'"

Subsequent to the death of John W. Myers, Florence E. Myers, widow of John W. Myers, issued and delivered to the petitioner two checks totaling the sum of $1,423.44. Both checks were returned to the petitioner by the Southwest Bank of St. Louis because of the death of John W. Myers. The described bank account was the only bank account owned and carried by the decedent and all of his business accounts and personal bills were paid on checks drawn on this account. On the date of the death of John W. Myers, the balance in the Southwest Bank of St. Louis, to the credit of his estate, was $2,945.29, and the claims filed and allowed against said estate were far in excess of the assets.

As stated above, petitioner's action is based upon § 473.357 RSMo 1959, 25 V.A. M.S., which provides as follows:

"If a person files in the probate court a verified petition alleging that the decedent was not and that the petitioner is the owner of personal property described therein, and that it is in the possession of the executor or administrator, and alleges how he acquired ownership thereof and that possession of the property is being wrongfully withheld from him by the executor or administrator, and prays that the court determine the title thereto and order and direct the executor or administrator to deliver the property to the petitioner, a notice and a copy of the petition shall be served on the executor or administrator, who, within ten days thereafter, shall file answer to the petition. If the answer does not admit the allegations of the petition the matter shall be set for hearing by the court and tried upon the issues under the petition and answer, and judg-

ment shall be rendered according to the finding and for costs."

The appellant, Executrix of the Estate of John W. Myers, deceased, contends that there are no moneys existing which the court can order delivered to the petitioner because the decedent had commingled the funds he had collected for the petitioner with other funds in his bank account and that, therefore, the moneys were undistinguishable. She further contends that the petitioner is not entitled to follow the funds collected by the decedent and so commingled with his other funds in his bank account on the theory that they are trust funds in the hands of the Executrix because the Probate Court has no jurisdiction to exercise a power strictly equitable in its nature.

In the case of State of Missouri ex rel. Meletio v. Hensley, Mo.App., 358 S.W.2d 85, we said, in commenting on this section of the statute, that the essential allegations which must be made by the petitioner in his verified petition are (1) that the decedent was not the owner of the described and disputed personal property; (2) that the petitioner is the owner; (3) how the petitioner acquired ownership; and (4) that possession thereof is being wrongfully withheld from petitioner by the executor or administrator. Petitioner in his petition does not allege that the decedent was not the owner of the described and disputed personal property. It is true that petitioner alleges that it is owner but the statute requires that both allegations be made. There is a further requirement of this statute and that is that the petitioner must describe the personal property that is in the possession of the Executrix belonging to petitioner. It is obvious from a reading of the stipulation of facts that there is no separate identifiable fund of $1,423.44, representing collections made by the decedent in behalf of the petitioner under the collection agreement. There is no question that no separate identifiable fund existed at the time of the death of John W. Myers. When the funds collected by John W. Myers were deposited in his personal bank account and commingled with the other moneys in his bank account, the moneys collected in behalf of the petitioner lost their identity. Eldridge v. Logan, Mo.App., 217 S.W.2d 588, l. c. 590.

Before relating petitioner's response to the contentions of the Executrix, we should point out that petitioner in its petition filed in the Probate Court attached an itemized statement of the amounts and dates of the collections that were made by the decedent and stated in its statement that "all moneys collected for gas bills were to be held in trust for Laclede Gas Company until such funds were turned over to the company. The Contract Agreement also states that all moneys collected from customers for their gas bills will be kept separate and distinct from the Dealer's own funds and other property." Petitioner characterizes this fund as a trust fund and it is the position of the Executrix that the Probate Court was wholly without jurisdiction to determine whether or not a resultant or constructive trust ever existed since the funds claimed were commingled with other funds of the decedent and that the Probate Court had no jurisdiction of a proceeding to trace or recover trust funds. However, petitioner states that the Probate Court does have jurisdiction to determine title to personal property under the section of the statutes cited and that this section authorizes the Probate Court to employ equitable principles in determining title to personal property, citing North v. Hawkinson, Mo., 324 S.W.2d 733; Masterson v. Plummer, Mo.App., 343 S.W.2d 352; and Stark v. Moffit, Mo.App., 352 S.W.2d 165.

The case of North v. Hawkinson, supra, originated in the *Circuit Court*. It was an action for an accounting based on an alleged oral partnership agreement between plaintiff and defendant's testator. Plaintiff in his petition alleged that testator "was a trustee of the firm's accounts and the transactions constituted a mutual running and current account between them" of the partnership business. Plaintiff prayed for an accounting and for a judgment of $80,000 against

the Estate of Hawkinson. Plaintiff contended that his action was purely an equitable matter over which the Probate Court had no jurisdiction, and the limitation periods of the Probate Court are not applicable (citing cases). The Supreme Court in commenting on the cases cited stated: "These cases arose under the prior Probate Code, the new Probate Code having been enacted by Laws 1955, p. 385, to be effective January 1, 1956." (324 S.W.2d l. c. 736.)

The court in commenting on various sections of the new Probate Code cited § 472.-030 which provides as follows:

"The court has the same legal and equitable powers to effectuate its jurisdiction and to enforce its orders, judgments and decrees in probate matters as the circuit court has in other matters * * *." (324 S.W.2d l. c. 738).

The court also summarized the provisions of § 473.357, heretofore cited. The language of the court, which petitioner claims gives support to his contention, is that used by the court when discussing § 472.030, wherein the court said:

"The equity jurisdiction thus conferred is not the general equity jurisdiction of circuit courts, but plenary equity jurisdiction of 'matters pertaining to probate business.' The 1945 Constitution requires probate judges, except then incumbents, to be licensed to practice law (Art. V, § 25), and the reason stated in Bauer v. Gray, 18 Mo. App. 164, 169, for withholding equitable powers from probate courts in matters pertaining to probate business has practically ceased to exist." (324 S.W.2d l. c. 740)

However, the significant statement contained in North v. Hawkinson, supra, which petitioner has failed to note, is the court's holding that the plaintiff was seeking a money judgment payable out of the assets of the decedent's estate in the hands of the Executrix for so much as an accounting may establish to be due him and important to a consideration of the instant action is

the statement, "[t]his is not an action for the recovery of specific personal property." (324 S.W.2d l. c. 740.) Other than the general statement made concerning the equity jurisdiction conferred on Probate Courts by § 472.030, there is nothing in this opinion to aid petitioner or this court in its determination of whether the Probate Court had jurisdiction to grant the relief prayed for in the instant case.

In the case of Masterson v. Plummer, supra, it is true that the action was instituted in the Probate Court and that it involved the creation of an executed voluntary trust which the Probate Court and the Circuit Court found was shown by clear, cogent and convincing evidence. However, basically the action was predicated on the provisions of § 473.357 and was one to determine title to certificates of deposit which were inventoried as assets in the estate of the decedent. Contrary to the situation existing in the instant case, these certificates were assets that were identifiable and describable and clearly within the provisions of § 473.357. While it is true that the Probate Court and the Circuit Court found the execution of a trust, there was no attempt in the proceeding to trace and recover trust funds commingled with other funds of the testator as is the situation in the instant case. Perhaps a more pertinent reason why this case fails to aid petitioner is because the jurisdiction of the Probate Court was not raised and was not discussed by the Springfield Court of Appeals.

We fail to see how petitioner can obtain any comfort and help from the case of Stark v. Moffit, supra, decided by this court. Petitioner, in relying on this case, states that it reaffirms the well established proposition that Probate Courts may determine questions of an equitable nature incident to the exercise of its statutory powers and may apply equitable principles in the adjudication of law cases. What we said in that case, after citing the provisions of § 472.030, was that whatever equitable powers a Probate Court may exercise by virtue of that section must be employed in the

discharge of its jurisdiction in probate matters. The statement pertinent to the instant case is the one in which we said: "The clause is not a grant to probate courts of jurisdiction in purely equitable matters." (352 S.W.2d l. c. 170.) The action in that case was instituted in the Circuit Court and, among other things, attempted to trace proceeds of a trust into an escrow fund. We held that the issues presented by the action and the relief sought therein were purely equitable in nature. Defendants in that case contended that if the Probate Court allowed plaintiff's claim it could decree that it be paid out of the escrow fund. Answering this, we said, "This would be, in effect, the establishment and enforcement of a trust in favor of plaintiff on the escrow fund, a purely equitable relief, and beyond the jurisdiction of the Probate Court." (Citing cases.) (352 S.W.2d l. c. 170.)

In Stark v. Moffit, supra, we held that it is well settled that a court of equity has jurisdiction of all questions relating to the establishment, enforcement and protection and preservation of a trust on real or personal property. We further said, "A probate court, on the other hand, is a court of limited, statutory jurisdiction, possessing only those powers expressly conferred by statute or those necessarily incident to the proper exercise of duties directly imposed. In re Frech's Estate, supra [Mo., 347 S.W. 2d 224]." (352 S.W.2d l. c. 170.)

A statement of more importance made by this court in that case is one wherein we said the Probate Court does not "have jurisdiction of a proceeding to trace and recover trust funds. Howard's Estate v. Howe, 344 Mo. 1245, 131 S.W.2d 517; Dietrich v. Jones, 227 Mo.App. 365, 53 S.W.2d 1059." (352 S.W.2d l. c. 170.)

It can hardly be denied that this proceeding is one to trace and recover trust funds collected by the decedent prior to his death. It must be remembered that the petitioner's proceeding in the Probate Court is not one to have a claim allowed but is one wherein it seeks a priority or preference and to have the court trace and recover the trust funds commingled with the funds in the decedent's bank account.

In the case of Stark v. Moffit, supra, we relied on the authority of In re Frech's Estate, Mo., 347 S.W.2d 224. That case involved a proceeding in the Probate Court to discover assets. The Circuit Court dismissed the proceeding on the ground that the Probate Court lacked jurisdiction over the subject matter, holding that the issues were of an equitable nature and that as a result neither the Probate Court nor the Circuit Court (a court of derivative jurisdiction) had jurisdiction. It was the position of the Administrator that upon the revocation of a trust by the settlor, equity has no further jurisdiction in the matter and that when a trust is terminated by the exercise of a power of revocation, and where under the terms of the trust nothing remains to do but surrender and physically deliver up the trust property, the trustee is under a duty enforceable in an action at law to pay the money or transfer the chattels immediately and unconditionally to the Administrator and that, therefore, it was enforceable in a proceeding in the Probate Court to discover assets. The Supreme Court, having in mind the issues involved, said at (347 S.W.2d l. c. 227):

"The probate court, however, is a court of limited, statutory jurisdiction, without power to entertain a suit or proceeding based upon strictly equitable principles, State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W.2d 909 * * *. Jurisdiction over trusts has always been regarded as 'one of equity's original and inherent powers.' * * * Equity has jurisdiction of all questions relating to the establishment, enforcement, protection, preservation, and the termination and revocation, of inter vivos trusts. On the other hand, it has been affirmed and reaffirmed that the probate court lacks jurisdiction in matters involving trusts and trustees." (Citing cases.)

The Court pointed out that the objective of the proceeding was to compel the trustees to deliver and yield up the trust assets upon the basis of a Probate Court finding and adjudication that the trust was previously revoked by the act of the settlor. The Court found that the ultimate issue and all the subordinate incidental issues were strictly equitable in nature and that they were outside the jurisdiction of the Probate Court. Among the various proceedings it declared to be beyond the proper jurisdiction of the Probate Court were "the tracing of trust assets; the winding up of the trust; the trustees' accounting for receipts and disbursements; the distribution of the assets to the proper person; * *." (347 S.W.2d 1. c. 228.) And of extreme significance and binding upon this court is the language of the Supreme Court in this case wherein it said: "The probate court has no jurisdiction over the tracing of trust funds." (347 S.W.2d 1. c. 229.)

As we said before, we feel that this is a proceeding attempting to trace funds into the bank account of the decedent and, therefore, is one beyond the jurisdiction of the Probate Court. Evidently the Probate Court was of such a mind when it denied petitioner's prayer.

We are aware that in a recent case decided by the Supreme Court, Mathews v. Pratt, 367 S.W.2d 632 the Court said, after citing the provisions of § 472.030, supra:

"We have no occasion here to construe that section, nor shall we do so. We merely call attention to it. It was ignored in Frech, supra, but it was discussed later in Stark. The proper time and place will come for an adequate construction of the section, but this case presents neither, for this appeal does not arise from probate action or assumed probate jurisdiction."

The Court in a concluding paragraph further said:

"We hold that this is a suit in equity to establish and enforce a trust, and

that the Circuit Court had inherent jurisdiction; also, that the petition properly stated a claim. It may be that the Probate Court would have the power to do the same things in a discovery proceeding under the existing Code, contrary to what has so long been declared. We do not so decide here."

The statements just quoted seem to indicate some doubt about the holding in the Frech case which holds that the Probate Court has no power to establish, declare, enforce and execute trusts. However, as said in the Mathews case, the Supreme Court did not decide that Probate Courts do have authority to establish and enforce trusts and, therefore, we feel bound to follow the holding in the Frech's Estate case and the many prior cases containing a similar holding.

Petitioner next contends that there was no intention to create a formal trust fund and that the bank account was merely a conduit used for the purpose of converting a large number of small payments into one large one and that the money did not lose its identity as such. Petitioner cites four cases allegedly in support of this contention. We have examined all of the cases cited by petitioner and find they do not support the point asserted by it and for this reason we see no need of reviewing all of these cases individually. All of the cases involved actions filed in the Circuit Court and all of them were equitable actions to either establish or enforce a trust. In all of the actions the Court clearly recognized them as purely equitable actions and in none of them do we find any support for the contention that there was no intention to create a formal trust fund in the instant case or any support for the contention that the bank account was merely a conduit for the passage of the money. Petitioner seeks to obtain some solace from the statements in some of the cases in which it is said that when a person holds property in a fiduciary capacity and mixes his own property with it so that it cannot be sep-

arated nor the amount of each ascertained, the whole becomes both at law and at equity the property of the trust estate. No one will quarrel with this statement of the law, which has been announced in innumerable other cases, but it in no way can act as support for a contention that the Probate Court can determine and settle this purely equitable problem.

One of the cases cited by petitioner in support of this point is Orr v. St. Louis Union Trust Company, 291 Mo. 383, 236 S.W. 642, which was an action in the Circuit Court to seek a construction of a will and an establishment of a trust as to a portion of decedent's estate. Among other things, the court pointed out that certain funds in the hands of the decedent at the time of his death retained their trust character and that these funds in the hands of his trustee under his will served to swell his estate by the amount of such trust fund and that said trustee was accountable for such trust funds. The interesting statement in that case, which petitioner failed to point out to us, is the following: "Mrs. Ghio's claim involved the establishment of a trust and an accounting, matters of an equitable nature, and therefore not cognizable before the probate court in the administration proceedings, * * *." (236 S.W. 1. c. 648.)

Finally, petitioner contends its action is one for "money had and received" and cites cases in support of its position. In this connection it states that it has the right to disregard the trust relationship between the decedent and petitioner and to look at the claim as one for money had and received. However, the cases cited by petitioner do not aid his point. Two of the cases (Newco Land Co. v. Martin, 358 Mo. 99, 213 S.W. 2d 504, and Clifford Banking Co. v. Donovan Commission Co., 195 Mo. 262, 94 S.W. 527) originated in the Circuit Court and, therefore, are no authority for a question involving jurisdiction of the Probate Court.

In the case of In re Gaebler's Estate, Mo.App., 248 S.W.2d 12, the claim, which was originally filed in the Probate Court of St. Louis County, was declared to be in the nature of an action for money had and received. This was an action to have allowed as a claim moneys paid to the decedent under a mistake of fact and without consideration. We held that the Probate Court had jurisdiction agreeing that it was an action at law for money had and received.

In the other case cited by petitioner, In re DeGheest's Estate, 360 Mo. 1002, 232 S.W.2d 378, the claim was filed against the Estate founded upon five checks and letters signed by the deceased. The Supreme Court held that the action was not one on negotiable instruments but was an action for money had and received. There was no discussion in this case about the jurisdiction of the Probate Court.

■■ Summing up what we have said, we find that § 473.357, supra, is not applicable to petitioner's action for the reason there is no such identifiable sum of money in the estate of decedent as described in petitioner's petition. If there had been a separate fund established capable of identification, either in a bank account or elsewhere, this section would have application. Under the pleadings and stipulated facts in this case the Probate Court would have had to determine the existence of a trust and then proceed to trace and recover the trust funds. This it cannot do, so the Supreme Court said in the case of In re Frech's Estate, supra, and Howard's Estate v. Howe, supra, a principle of law which we followed in Dietrich v. Jones, supra, and in Stark v. Moffit, supra.

We find the Probate Court was right in denying the relief sought by petitioner and that the Circuit Court erred in allowing said relief. The judgment of the Circuit Court is ordered reversed.

WOLFE and LYON ANDERSON, JJ., concur.