**TRUST ESTATE UNDER LAST WILL and Testament OF Irwin C. WELCH, Deceased, and Martha E. Welch Conservatorship, (James R. Behrens, Successor Conservator) State of Missouri ex rel. Steven S. Schroder and Charles E. Schroder, Plaintiffs–Appellants,**

v.

**Clarence E. WELCH, Jr. and American States Insurance Company Formerly the Western Casualty and Surety Company, Defendants–Respondents.**

No. 61496.

Missouri Court of Appeals, Eastern District, Northern Division.

Dec. 8, 1992.

---

1. We added the emphasis.

Clayton & Rhodes, Robert M. Clayton, II, Hannibal, for plaintiffs-appellants.

Brett, Erdel, Van Matre, Tanzey & Hamlett, P.C., Bradford A. Brett, Mexico, for respondent American States Ins. Co.

Wasinger, Parham, Morthland, Terrell & Wasinger, James D. Terrell, Hannibal, for respondent Clarence E. Welch, Jr.

PUDLOWSKI, Judge.

This is an appeal from an action filed by the brother of an incapacitated ward against the former conservator of the ward's estate and his bonding company. Appellants sought damages for expenses incurred in compelling proper administration of the ward's estate. The trial court absolved the former conservator and his bonding company of liability. We affirm.

### I. Facts

In the late 1970's Irwin (Ted) Welch and his wife Martha Welch were concerned about paying federal taxes. They discussed these concerns with Martha's brother Charles Schroder. Charles consulted an attorney about his sister and brother-in-law's estate. Charles encouraged Martha and Ted to do some estate planning and to create a "secret" or "private" estate. The purpose of the private estate was to minimize federal income tax, avoid federal estate tax, and to pay income to Ted and Martha Welch while they were alive.

On November 1, 1979, Martha and Ted retained an attorney and executed reciprocal wills. The Welch's also retitled many of their assets by listing their nephews Clarence Welch, Jr. and Stephen Schroder, Charles' son, as joint tenants. The nephews could then report the income from these assets at their lower marginal tax rate. This arrangement was oral, but the assets were to be distributed in the manner

directed by Martha's and Ted's wills upon their death.

Charles Schroder was not to benefit from the private estate even though he played an important role in its set up and operation. Charles investigated various depository institutions and obtained signature cards for the purpose of maintaining private estate accounts. He opened a safe deposit box where the records of the private estate were kept. He also instructed the nephews they had no real ownership in the Welch's assets and never to divulge the existence of the private estate.

The private estate consisted of several assets. The largest asset was a promissory note of $107,000 made by Charles and Steven Schroder in favor of Ted and Martha Welch. This note was secured by a deed of trust on a 68 acre tract of land. There was an assignment on the back of the note whereby Ted and Martha Welch assigned the note back to Charles and Steven Schroder. Charles Schroder testified that the purpose of the assignment was to protect himself and Steven from liability because it was not meant to be an arms length transaction with ongoing liability if one of them accidentally died. None of these documents were initially recorded.

The private estate also consisted of two certificates of deposit (CD). The first CD was jointly held by Martha Welch, Steven Schroder, and Clarence Welch. The second CD was jointly owned by Ted Welch, Steven Schroder, and Clarence Welch.

Charles Schroder organized various bank accounts for the private estate. Four accounts contained approximately $40,000. Approximately eight other bank accounts in Hannibal and Palmyra were jointly owned by Ted Welch, Steven Schroder and Clarence Welch. Also, two "transition accounts" located in Hannibal were used to purchase investments.

The private estate also included a $10,000 MFA bond, an $1,800 debt due from an individual named Barnett, and other personal property. Finally, Charles Schroder testified that there was a mortgage liability of approximately $33,000 given by the firm that made the inventory appraisement.

The operation of the private estate was as complicated as its structure. The income of the various CD's and accounts was taxed to Steven Schroder and Clarence Welch. Steven and Clarence were then reimbursed for the extra taxes they had to pay as a result of this income. They also paid Ted and Martha Welch the income earned from these investments. Because the agreement governing operation of the private estate was not in writing, there was some lack of clarity over how to handle the estate. Notwithstanding any confusion, Charles Schroder, Steven Schroder, and Clarence Welch each knew the location and amounts of the private estate assets at all times.

On November 24, 1984, Ted Welch died. Clarence Welch was designated testamentary trustee under Ted's will. Clarence filed an application for appointment as conservator of Martha's estate. After a hearing on January 29, 1985, the court found that Martha was incapacitated and appointed Clarence as conservator. American States Insurance Company's predecessor, Western Casualty and Surety, issued a $40,000 conservator's bond assuring that Clarence Welch would faithfully administer the estate. The conditions of the bond stated that Clarence Welch would "account for, pay and deliver all money and property of said estate and perform all other things touching said Guardianship required by law, or the order or decree of any Court having jurisdiction."

On May 21, 1985 Clarence Welch filed the Inventory and Appraisement of Martha's estate that was due on March 1, 1985. Several of the private estate assets, including the promissory note and deed of trust, were not identified on this listing. At this time, though, Clarence Welch recorded the deed of trust. Clarence's attorney, Austin Parham, began corresponding with Charles Schroder's attorney, Frank Harvey, regarding note payments that had not been made since Ted Welch's death. On August 20, 1985, Frank Harvey responded by letter acknowledging that Mr. Parham was trying, on behalf of Clarence Welch, to get either the $107,000 note or the land secur-

ing the note into the conservatorship and requesting transfer of all the remaining private estate assets into the conservatorship. Litigation between Charles Schroder and Clarence Welch as conservator and the successor conservator resulted over disputes about whether the assignment of the note was legitimate and whether the note or the 68 acres should be an asset of the conservatorship. On November 23, 1985, Charles Schroder conveyed the land to the conservatorship.

Also not listed on the inventory were the two CD's that matured in 1985. The first CD was cashed in and converted to Martha's use in the conservatorship. The second CD was transferred to an account in Springfield, Illinois. The names on this account were Steven Schroder, Clarence Welch, and Joleen Welch, Clarence's wife. Although these parties knew that this money was to be used for the benefit of Martha, Steven signed the signature card but did not return it to Clarence because he was uncomfortable having Clarence's wife listed on the account. Clarence later spoke with Steven about transferring the money into Martha's name. Steven Schroder eventually turned over this CD to the conservatorship on February 6, 1989, after a Petition to Discover Assets had been filed against him.

Although the MFA bond was also not listed as a conservatorship asset, Clarence Welch initiated a lawsuit, after obtaining probate court approval, to recover the proceeds for the conservatorship. The successor conservator successfully concluded the lawsuit by recovering on the bond for the conservatorship.

Charles and Steven Schroder believed that the private estate should be rolled into the conservatorship even though they did not object to the inventory. Several letters in 1985 and 1986 were sent to Clarence Welch stating the Schroders' concern that there was no real need to maintain the private estate.

In August 1987, Charles and Steven Schroder petitioned for the removal of Clarence Welch as conservator. After Clarence failed to file the annual settlement due on January 31, 1988, Charles and Steven filed a Motion to Compel Annual Settlement on February 25, 1988. On June 1, 1988, the probate case was consolidated into this civil case. Clarence Welch filed the annual settlement on July 5, 1988. Clarence was removed as conservator on August 3, 1988, and the successor conservator, James Behrens, was appointed on September 2, 1988. The order removing Clarence Welch as conservator required him to turn over all money, property and records to the successor conservator and file a final settlement of his account no later than September 6, 1988. On September 8, 1988, the probate court signed an order discharging Clarence Welch and the sureties on his bond. On September 14, 1988, Clarence filed his final settlement in the Martha Welch conservatorship. The settlement was filed in the probate court, despite the order consolidating the actions into this civil case. Notice of the final settlement and an explanation of the filing problems was provided in a letter, dated September 13, 1988, from Clarence Welch's attorney to the probate clerk and the other attorneys involved in the case.

The conservatorship suffered no monetary damages during Clarence Welch's tenure as conservator. Clarence did not waste, convert or misappropriate any assets of the conservatorship. Although neither Charles nor Steven Schroder were conservators, Charles incurred substantial attorney's, administrative and travel expenses[1] in litigation forcing Clarence Welch to account for estate assets and in getting him removed as conservator. On December 26, 1990, Charles and Steven Schroder, therefore, filed their Petition to Compel Final Settlement and Determination of Liability against Clarence Welch and the American States Insurance Company (American) on its $40,000 bond.

1. Charles Schroder claimed damages of $37,411.20, broken down as: attorney's fees and expenses, $29,929.62; administrative expenses, $1,187.87; travel expenses, $3,296.00; and telephone expenses, $2,997.71.

On October 23 and 24, 1991, the Circuit Court of Marion County heard this bench trial. In its Findings of Fact and Conclusions of Law issued December 20, 1991, the court found against Charles and Steven Schroder and in favor of defendants Clarence Welch and American. The final settlement was approved and the defendants were discharged. The trial court supported its holding with several grounds which are contested by appellant Charles Schroder in his six points on appeal.

## II. Standard of Review

We can reverse only if possessed with the firm belief that the Findings of Fact and Conclusions of Law are wrong and there is no substantial evidence to support them, or they are against the weight of the evidence, or they erroneously declare or apply the law. *Glasco Elec. Co. v. Best Elec. Co.*, 751 S.W.2d 104, 107 (Mo.App. 1988). We accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard contrary evidence. *Price v. American Bank of St. Louis*, 793 S.W.2d 593, 598 (Mo.App. 1990). We also defer to the trial court's determination even if the evidence might support a different conclusion. *Id.* Finally, due regard must be given to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.-01(c)(2).

■ Before discussing the substantive issues, the posture of this appeal requires explanation. Reversing the decision of the trial court would require finding that each of the alternative grounds stated in the conclusions of law supporting the trial court's decision was erroneous. This is essentially what appellant's brief attempts to do. The judgment in this court-tried case is to be affirmed if it could properly have been reached on any reasonable theory, *Worlledge v. City of Greenwood*, 627 S.W.2d 328, 331 (Mo.App.1982), including any single ground stated in the conclusions of law.

## III. Management of the Conservatorship

■ Appellant Charles Schroder argues, in his first point, that the trial court erred in finding that Clarence Welch did not intentionally withhold assets from disclosure in the Martha Welch estate and properly managed the estate. Appellant contends the evidence established that Clarence Welch failed to account for several estate assets until forced to do so by appellant. These assets include the $107,000 note or the 68 acre tract of land, the CD and bank accounts, the MFA bond, the $1,800 note from Barnett, and the $33,000 mortgage liability testified to by Charles Schroder. The failure to inventory these items and the delinquent filing of the annual settlement, according to appellant, violated the probate law.[2] Moreover, appellant urges that Clarence Welch's placing his wife's name on Martha's bank account constituted a breach of trust.

We also address appellant's fourth point under this heading. That point asserts that the trial court erred in finding appellant culpable of "unclean hands." Appellant argues that this defense was never pleaded or proved in that his alleged misconduct ended before the commencement of this case and he was the first to demand that all of the assets be made part of the conservatorship.

Viewing the evidence in the light most favorable to Respondent Clarence Welch, we find that he did not improperly withhold assets from disclosure or mismanage the Martha Welch estate. Although certain assets were not inventoried in accordance with probate requirements, this failure primarily resulted from the complexity of the private estate that Charles Schroder organized and the lack of cooperation from Charles and Steven Schroder in bringing all the assets into the conservatorship.

■ The lack of any written agreement and the vow of secrecy about the private estate led to confusion about which assets

---

**2.** Appellant cites sections 475.145 and 473.233-.243, RSMo 1986, for inventory and appraise- ment requirements.

comprised the private estate and which should be disclosed in the event of Ted's death and Martha's incapacity. Also, the Schroder's treatment of certain assets belied the oral trust to hold them for the benefit of Martha. Appellant's contention that these unclean hands issues were not pled has no merit because these matters were the focus of the testimony presented and were clearly tried with the implied consent of the parties. *See* Rule 55.33(b).

■ As stated in the fact section, the $107,000 note and the land were the subject of litigation because of the Schroder's failure to pay on the note or convey the 68 acres to the conservatorship. Appellant cannot argue the failure to inventory assets that he initially withheld from the conservatorship. The same is true of the second CD which was withheld from the conservatorship because of Steven Schroder's refusal to return the signature card. The fact that it took a Petition to Discover Assets to get Steven to turn over the CD exposes the duplicity of this argument. This highlights the weakness of appellant's contention that he was the first to demand that all of the assets be conveyed to the estate. Appellant cannot disassociate himself from his organization of and participation in the private estate because he was responsible for much of the confusion, litigation and expense arising out of this scheme. Equity will not aid a party who resorts to unjust and unfair conduct. *McKnight v. Midwest Eye Institute,* 799 S.W.2d 909, 917 (Mo.App.1990)

■ Also, Clarence Welch's placing his wife Joleen's name on the account was not improper. He testified that it was done merely to facilitate convenient transfers. Moreover, he offered to remove his wife's name from the account or take other safeguards to protect the account for Martha at Steven's behest. The trust was maintained at all times for the benefit of Martha and it never sustained any damages.

Similar problems existed regarding the other uninventoried assets. The MFA bond was the subject of litigation. It was not reported as an asset until the proceeds were recovered for the estate. Although the $1,800 debt due from Barnett, the personal property, and the $33,000 mortgage liability were not initially inventoried, they and all of the private estate assets were known to the parties and included in the final settlement filed by Clarence Welch. We do not find, under the antagonistic circumstances of this case, that the filing delay rendered the conservator's behavior improper. All the involved parties were aware of the existence, whereabouts, and purpose of the assets throughout the years. Appellant's assertion that his conduct ended before the inception of the instant action is untenable because this animosity continued throughout the years and all of the litigation culminating in this suit. The trial court's conclusion that appellant ran afoul of the equitable doctrine of unclean hands was supported by substantial evidence.

After reading the transcript and giving deference to the trial court's opportunity to judge the witnesses' credibility, we are of the opinion that the loose compliance with the probate requirements was precipitated by appellant's stubborn reluctance to convey assets to the conservatorship. The conservator was at all times motivated by his duty to preserve the estate for the benefit of Martha Welch, and his tenure caused no monetary damage to the conservatorship. We acknowledge that Clarence Welch did not flawlessly perform his duties as conservator as is evidenced by his late filings. Given the impediments to carrying out his duties and the unforeseen complications posed in these facts, however, Clarence Welch did not improperly manage the estate or intentionally withhold disclosure of private estate assets. There was substantial evidence to support these findings and conclusions and they were not against the weight of the evidence.

### IV. Final Settlement Issues

The first part of appellant's second point states that the trial court erred in applying the doctrine of laches and barring objection to Clarence Welch's settlement filed on September 14, 1988. Appellant asserts that the court cannot find laches when that

defense was never pleaded or proved and the length of delay was not unreasonable and no prejudice or change of position was shown.

Our disposition under the first point allows us to dispense with extended discussion of the laches issue. This conclusion of law in the trial court's holding was merely an additional basis upon which its decision was established. For even assuming that laches did not bar appellant's objection to the final settlement, appellant would still have to show merit to his objections to the final settlement. The objections contained in the Petition to Compel Final Settlement and Determine Liability do not go to the substance of the settlement. They merely object that no final settlement was filed at all or that the September 14, 1988 settlement should not be considered final. These arguments are contained in part two of appellant's second point.

■ That point states that the trial court erred in approving the September 14, 1988 settlement as final because that settlement could only be approved as an annual settlement and not a final settlement. Appellant argues that the lack of compliance with procedures governing approval of final settlements, and the failure of the trial court to advise the parties at trial that it would consider the final settlement and to examine the records and accounts prevents it from being a final settlement.

There is no merit to this argument because, as stated in the trial court's conclusions of law, the very nature of the August 3, 1988 order apprised the parties that a final settlement would be forthcoming. The September 13, 1988 letter, provided proper notice that the settlement would be considered final. Appellant's attorney, the probate clerk, and the successor conservator all received a copy of this letter and the final settlement. The settlement was filed within sixty days after termination of Clarence Welch as conservator on August 3, 1988. Section 475.290, RSMo 1986. In light of Clarence Welch's removal as conservator a few weeks earlier, we fail to see how this could be construed as anything but a final settlement. The trial court's

finding that final settlement procedures were sufficiently complied with is supported by substantial evidence, and it did not incorrectly apply the law.

No objection was made to the September 14, 1988 final settlement until this suit was filed over two years later. The parties were sufficiently advised that the trial court would consider the issue of the final settlement because this issue was stated in appellant's petition. At trial the matter of the final settlement was litigated with the express or implied consent of appellant. *See Gathright v. Pendegraft*, 433 S.W.2d 299, 305 (Mo.1968). Evidence was presented, without objection, regarding the September 14, 1988 settlement and matters leading up to and after that filing. The trial court adequately examined records and properly approved the final settlement in its Findings of Fact and Conclusions of Law. There was substantial evidence to support the trial court's consideration and approval of the September 14, 1988 as a final settlement. Notwithstanding the trial court's conclusion that laches applied, appellant's objections to the final settlement would not warrant reversal.

## V. Remaining Issues

As alluded to above, several of appellant's points challenge alternative conclusions of law that support the trial court's decision. Each of appellant's arguments in his third, fifth, and sixth points on appeal are dependent on there being some finding of mismanagement or intentional nondisclosure of private estate assets. Because we found that the conservator did not act improperly, we can summarily address these points.

In his third point, appellant argues that the trial court erred in concluding that the successor conservator is the real party in interest in an action to determine liability against a conservator or his surety. Appellant insists that Missouri law permits action at the instance of any party injured for mismanagement of the estate or other breach of the conditions of the bond. Regardless of whether appellant has an actual and justiciable interest, the lack of malfea-

**574**

sance that we found under point I precludes recovery in the first place.

Appellant's fifth point states the trial court erred in concluding that Missouri law does not permit recovery by appellant of his attorney's fees and expenses in connection with the actions against the conservator. Even assuming Missouri law permitted recovery of attorney's fees, appellant has not shown any wrongdoing or mismanagement on which that award could be based. *See In re Estate of Zeppenfeld*, 593 S.W.2d 890, 894 (Mo.App.1979).

■ In his final point, appellant argues that the trial court erred in ruling that because the estate did not suffer any monetary loss, the corporate surety has no liability for monetary damages. He contends that the liability of the surety is not dependent upon the estate suffering monetary damage but is liable for acts of the conservator. Again, even if American could be held liable if the estate did not suffer monetary damages, there must be mismanagement or wrongdoing that necessitated the litigation. Although actions and expenditures benefitting the estate may be recovered, *State ex rel. Gnekow v. United States Fidelity & Guaranty Co.*, 349 Mo. 528, 163 S.W.2d 86, 89 (1942), the litigation expenses incurred by appellant cannot be recouped because this did not benefit the estate. We found under point I that the conservator acted properly and that this litigation was primarily a result of Charles Schroder's scheme and the frustrations that Clarence Welch encountered in carrying out his duties.

The trial court's approval of the September 14, 1988 final settlement and the entry of judgment in favor of Clarence Welch and American are affirmed.

KAROHL, C.J., and SIMON, J., concur.